

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9738 | **DATE** | 7/19/2002 |
| **CASE TITLE** | GREG LITTLE vs. ROBERT TAPSCOTT | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss is granted. This case is hereby terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | /0 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TBK | courtroom deputy's initials | date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREG LITTLE, ) <br> ) <br> Plaintiff, ) <br> ) No. 01 C 9738 <br> v. ) Hon. Ronald A. Guzman <br> ) <br> ROBERT TAPSCOTT ) <br> ) <br> Defendant. ) | **DOCKETED** <br> JUL 2 3 2002 |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Robert Tapscott's motion to dismiss Plaintiff Greg Little's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below this motion is hereby granted.

## BACKGROUND FACTS

Plaintiff, Greg Little ("Little") who is currently employed by the Illinois Department of Revenue ("IDOR") as a Senior Special Agent, has sued Defendant, Robert Tapscott ("Tapscott"), pursuant to 42 U.S.C. § 1983, alleging that he was retaliated against for opposing discriminatory practices in violation of his "substantive due process" rights under the Fourteenth Amendment. Tapscott, the IDOR Program Administrator, was one of the IDOR's managers who was responsible for supervising the investigation of discrimination and the EEO complaint made by Little against the Department of Revenue and who had the authority to recommend whether Little should be terminated because of his alleged misconduct. Tapscott is being sued in his individual capacity.

/C

In September of 2000, Plaintiff filed a complaint against the IDOR, the Illinois Gaming Board ("IGB"), Glen Bower ("Bower"), individually and as Director of the IDOR, and Joe Haughey ("Haughey"), individually. (Case No. 00 C 7836). In *Little 1*, Plaintiff alleged that the defendants discriminated against him because of his race, African-American, and retaliated against him for opposing discriminatory practices under 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1983 ("*Little 1*"). This case was assigned to Judge Kocoras. Haughey was the IGB's Deputy Director of Enforcement and Little's supervisor at the IGB. Bower was the Director of the Department of Revenue and the final decision maker in any decision to discipline, suspend and terminate Little.

As part of the discovery process in *Little 1*, on June 25, 2001, Little deposed Tapscott. He asked Tapscott numerous questions regarding his involvement in the recommendation to the IDOR Director Bower that Little be discharged for allegedly violating several rules of employee conduct. In November, 2001, following an arbitration hearing, an arbitrator ordered the IDOR to reinstate Plaintiff, but the arbitrator did not award Plaintiff any back pay or benefits for the eleven-month period that he was on discharged status.

On December 11, 2001, Little moved in *Little 1* for leave to file an amended complaint to add Defendant Tapscott as an additional party, despite the fact that discovery had closed on November 13, 2001. Judge Kocoras denied Little's motion to amend on December 17, 2001. Three days later, on December 20, 2001, Little filed this action against Tapscott ("*Little 2*") only under 42 U.S.C. § 1983.

In *Little 2*, Little alleges that Tapscott was aware that the investigative report compiled with respect to his alleged misconduct contained numerous contradictions, Tapscott knew that Little had made prior complaints against one of the investigators who claimed Little was guilty of the allegations and he was aware that another individual who made allegations against Little had been criticized by Little for using disparaging racial remarks. Little also claimed that although Tapscott knew that the allegations and charges against Plaintiff were false, he still recommended Little's termination.

On May 14, 2002, Judge Kocoras granted defendants' motion for summary judgment in *Little 1* finding that Little has failed to shoulder his burden of proving his Title VII claims and "the charges contained in the report were of sufficient gravity to independently warrant the actions of Bower and Haughey [taken] in response, and Little's claim therefore lack[ed] the necessary 'but for' connection that would allow him to show a constitutional violation... and therefore...were qualifiedly immune from liability" for the alleged section 1983 violations. *Little v. Ill. Dept. of Revenue*, No. 00 C 7836, 2002 U.S. Dist. LEXIS 8625, 2002 WL 992623, *6 (N.D. Ill. 2002). Little appealed Judge Kocoras' decision on June 6, 2002.

Tapscott now moves to dismiss Little's second lawsuit. In support of this, Tapscott now argues that the claims should be dismissed because the allegations in the complaint were raised in *Little 1* or should have been raised in *Little 1*. Tapscott contends that the current action is simply duplicative litigation and *res judicata* and/or collateral estoppel act as a bar to Little's current lawsuit.

-3-

## DISCUSSION

When evaluating a motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal of a complaint is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Because both the prior and the current litigation were brought in federal court, the federal principles of *res judicata* and collateral estoppel will determine whether Little's prior suit bars him from maintaining this action. *See Matter of Energy Coop. Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987). The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *Res judicata* and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication. *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Traditional principles of *res judicata* and collateral estoppel apply to section 1983 suits.[1] *Fields v. Sarasota Manatee Airport Authority*, 953 F.2d 1299, 1303 (11th Cir. 1992) (citing *Allen*, 449 U.S. at 101, 103-04). The crucial distinction between the two doctrines is that *res judicata* bars not only those issues which were actually

---

[1] Although the *Allen* court had reserved decision in whether *res judicata* precludes relitigation in a section 1983 suit of issues which the plaintiff could have raised but did not raise in an earlier action, the Supreme Court explicitly approved of federal appellate court decisions holding that section 1983 presents no categorical bar to the application of *res judicata* and collateral estoppel principles. *Lee v. City of Peoria*, 685 F.2d 196, 198 (7th Cir. 1982).

-4-

decided and litigated in the prior action, but also any issues which could have been raised. *Lee v. City of Peoria*, 685 F.2d 196, 198 (7th Cir. 1982).

### 1. Res Judicata

Under the doctrine of *res judicata*, if a final judgement is reached on the merits of an action, any future claims brought by or against the same parties or their privies based upon the same action is barred. *Montana*, 440 U.S. at 153. Where applicable, the doctrine of *res judicata* bars all claims that were raised or could have been raised in the prior litigation. *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995). For the *res judicata* bar to attach there must have been: (1) a final judgment on the merits in the prior suit; (2) an identity of the cause of action in both the earlier and later action; and (3) an identity of parties or privies in the two suits. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1364 (7th Cir. 1988).

The first requirement is that the judgment in the previous action must have been final and on the merits. A judgment on the merits is based upon legal rights as opposed to simple matters of practice, procedure, jurisdiction, or form. *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 943 (7th Cir. 1981). Summary judgment constitutes a final judgment on the merits for purposes of applying res judicata. *Lester v. Brown* 929 F.Supp. 291, 293 (N.D. Ill. 1996). In *Little 1*, Judge Kocoras granted summary judgment in favor of the IDOR, IGB, Bower and Haughey on May 14, 2002. Thus, we have a prior final judgment on the merits of Little's race Title VII claims and section 1983 claims as to these four defendants.

The second requirement is that we must have an identity of the cause of action in both the earlier and later suit. This circuit utilizes the "same transaction test" test. *Car Carriers, Inc. v.*

-5-

*Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986). A cause of action consists of a "single core of operative facts" which give rise to a remedy. *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995) (citations omitted). The Seventh Circuit has also suggested that two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations. *Herrmann v. Cencom Cables Assocs, Inc.*, 999 F.2d 223, 226 (7th Cir. 1993). Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost. *Matter of Energy Coop., Inc.*, 814 F. 2d 1226, 1230 (7th Cir. 1987) (citing Restatement (Second) of Judgments § 24 (1982)). Claim preclusion operates not only as a bar to subsequent litigation of matters decided in the prior action, but also to any issues which could have been raised. *Golden*, 53 F.3d at 869-870. Under the doctrine of *res judicata*, when a final judgment has been entered on the merits of a case, its finality is not only as to the claim or demand in controversy and as to every matter which was offered and received to sustain or defeat the respective claim or demand, but as to any other admissible matter which might have been offered for that purpose. *Arizona v. California*, 530 U.S. 392, 424-25 (2000).

Therefore, the issue before the Court becomes whether the prior case and the current case arise out of the same core of operative facts, or, in other words, whether the same transaction was the catalyst for these two cases. The Court would also consider whether the two claims are based on the nearly the same factual allegations and whether the issues raised in the suit before us could have been raised in the prior action.

The essence of Little's present lawsuit is that his substantive due process rights under 42 U.S.C. § 1983 were violated by Tapscott when Tapscott recommended that Little be terminated.

Little attempts to distinguish the complaint he filed before Judge Kocoras by arguing that he has brought additional allegations that Tapscott testified at an arbitration hearing regarding the prior suspension, and thus, Tapscott violated the terms of the settlement agreement of a 1995 discrimination lawsuit brought by Little.

A review of the two complaints reveals that Little's attempt to differentiate the two complaints, standing alone, is insufficient to distinguish the two section 1983 causes of action.[2] While this alleged statement could feasibly be the basis of a state claim of breach of contract, it does nothing to change the essence of the 1983 action. Little's two causes of actions are based upon substantially the same claims. With identical predicates for the claims in each case, the transactional approach is irrefutably satisfied; the overlap is simply too significant and it can

---

[2] Little alleged that he has protested against racially discriminatory practices of IDOR in paragraph 8 of *Little 1*'s complaint and in paragraph 4 of *Little 2*'s complaint. Little alleged that in October 1999, he notified his supervisor that an Illinois State Police trooper illegally sold criminal history information in paragraph 12 of *Little 1*'s complaint and in paragraph 4 of *Little 2*'s complaint. Little alleged that in March 2000, he notified his supervisors that a white Illinois State Police trooper verbally harassed and used profanity towards a black casino employee in paragraph 8 of *Little 1*'s complaint and in paragraph 4 of *Little 2*'s complaint. Little alleged that all the defendants in *Little 1* retaliated against him for opposing discriminatory practices in paragraphs 21-22 of each count of *Little 1*'s complaint. Little had made the same allegations of retaliation by Tapscott in paragraph 9 of *Little 2*'s complaint. Little alleged that IDOR and IGB retaliated against him based on his 1995 discrimination lawsuit in paragraph 21 of Count 1 of *Little 1*'s complaint. The same allegation was made against Bower in paragraph 23 of Count IV of *Little 1*'s complaint. The same allegation was made against Tapscott in paragraph 8 of *Little 2*'s complaint. Little alleged that IDOR and IGB wrongfully referred to Little's prior discipline in connection with Little's termination in 2000, a violation of the 1995 lawsuit settlement agreement in paragraph 21of the Count I of *Little 1*'s complaint. The same allegation was made against Bower in paragraph 23 of Count IV of *Little 1*'s complaint. The same allegation was made against Tapscott in paragraph 8 of *Little 2*'s complaint. Little alleged that he was terminated from employment based on false allegations in paragraph 21 of count II and paragraph 23 of count III and IV of *Little 1*'s complaint. The same allegation was made against Tapscott in paragraph 7 of *Little 2*'s complaint. Little alleged that both Haughey and Bower knew that there was no basis for the disciplinary action taken against Little in paragraph 23 of counts III and IV of *Little 1*'s complaint. The same allegation was made against Tapscott in paragraph 10 of *Little 2*'s complaint. Little alleged that both Haughey and Bower violated section 1983 and their actions intended to punish Little for making good faith complaints in paragraph 24 of counts III and IV of *Little 1*'s complaint. The same allegation was made against Tapscott in paragraph 10 of *Little 2*'s complaint. Lastly, in *Little 1*, Little alleged that he has suffered emotional distress and has lost salary and employment benefits as a result of the defendants' actions. The same allegation was made against Tapscott in paragraph 11of *Little 2*'s complaint.

only be concluded that the second element of the *res judicata* test is satisfied. Therefore, the Court determines that the instant action against Tapscott arises from the same nucleus of operative facts as the previously ruled on action and, for the purposes of *res judicata*, there is an identity of the cause of action in both the earlier and the present lawsuit.

Little relies on *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579 (7th Cir. 2000) and *Cooper v. Eagle River Memorial Hosp., Inc.*, 270 F.3d 456 (7th Cir. 2001). First, the *Dormeyer* case says absolutely nothing about judicial estoppel. In fact, the only reference to the term "estoppel," is within the court's discussion of whether the Family and Medical Leave Act (29 U.S.C. § 2654) creates or excludes a right to plead estoppel. *Dormeyer*, 223 F.3d at 582. Second, the *Cooper* case discusses the common law of the state of Wisconsin, and its interpretation of judicial estoppel. *Cooper*, 270 F. 3d at 462-63. There is nothing in this case which invokes the common law of Wisconsin.

The third requirement is an identity of parties or privies in the two suits is necessary for *res judicata* principles to apply. The fact that Tapscott was not named as a defendant in *Little 1* clearly works against satisfying the third element of the *res judicata* test. However, there is an exception to the general principle of mutuality of parties. It occurs when there is "privity" between a party to the second case and a party who is bound by an earlier judgment. *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996). Thus, the question becomes whether the defendant in this case is a privy to one or more defendants from the previous case.[3] The

---

[3] Interestingly enough, Little has admitted that "Tapscott is employed by and is *in privity* with the same Defendants, and is being represented by the same attorneys who [were] defending the case before Judge Kocoras." (Pl's Response to Def's Motion to Dismiss at * 2) (emphasis added).

-8-

Supreme Court has recognized that although there are clearly constitutional limits on the "privity" exception, the term is now used to describe various relationships between litigants that would not have come within the traditional definition of that term. *Id.*

Strict identity of the parties is not necessary to achieve privity. *Kunzelman v. Thompson*, 799 F.2d 1172, 1178 (7th Cir. 1986). However, privity is not established for *res judicata* purposes by showing that the prior decision involves the same issues of law or fact and it will affect the subsequent litigant's rights as judicial precedent. *Fabricius v. Freeman*, 466 F.2d 689, 693 (7th Cir. 1972). The Seventh Circuit held that appropriateness of claim preclusion depends on how closely the interests of two sets of litigants coincide and the role the absentees played in the prior litigation. *Tice v. American Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998). Therefore, in order for privity to apply, the parties must be so closely aligned that they represent the same legal interest. *Kunzelman*, 799 F.2d at 1178.

Suits against employees in their official capacities are essentially suits against the government entities for which they work. Therefore, in official-capacity suits, privity exists between government entities and their employees. *Gray v. Lacke*, 885 F.2d 399, 405 (7th Cir. 1989). However, in the case at hand, Little sues Tapscott in his individual capacity. The Seventh Circuit has held that an adverse judgment in city employee's retaliatory discharge against the city did not preclude employee's subsequent suit against two city officials in their personal capacities in that officials sued in their personal capacities were not in privity with the government. *Gray*, 885 F.2d at 405. Thus, to the extent that Little is suing Tapscott in his

personal capacity, Tapscott is not in privity with IDOR, a government entity and a defendant in *Little 1*.

However, in *Little 1*, plaintiff has also sued the Illinois Gaming Board, IDOR Director Bower, individually and as Director of the IDOR, and Joe Haughey, individually.[4] Bower was the Director of the Department of Revenue and the final decision maker in any decision to discipline, suspend and terminate Little. Haughey was the IGB's Deputy Director of Enforcement and Little's supervisor at the IGB. Tapscott, the defendant in the case at hand was the IDOR Program Administrator. He was one of the IDOR's managers who was responsible for supervising the investigation of discrimination and the EEO complaint made by Little against the Department of Revenue and who had the authority to recommend whether Little should be terminated because of his alleged misconduct.

As part of the discovery process in *Little 1*, on June 25, 2001, Little deposed Tapscott. He asked Tapscott numerous questions regarding his involvement in the recommendation to Director Bower that Little be discharged for allegedly violating several rules of employee conduct. In their motion for summary judgment, the Defendants in *Little 1* submitted an affidavit of Robert Tapscott which detailed his involvement in the decision to recommend that Little be discharged. Therefore, Tapscott's role in Little's termination was clear and Judge Kocoras recognized Tapscott's involvement in the collective decision to recommend that Little be discharged from his employment with the IDOR. *Little*, 2002 WL 992623 at *4-5. According to Judge Kocoras' findings, Tapscott concluded that the investigation was

---

[4] It is not clear why Little had chose to sue Haughey in his individual capacity only.

comprehensive and that the recommendations were supported by the facts contained in the report. *Id.* at *5. Four other Department's managers also reviewed the same investigation report and made similar conclusions. *Id.* Director Bower instructed Tapscott to initiate the disciplinary process. *Id.* Haughey and another Deputy Administrator presided over the disciplinary conference and prepared a memorandum summarizing Little's response to the charges and the investigative report. *Id.*

In light of the above facts, the Court determines that the two sets of litigants had closely aligned interests. While it can be argued that Bower's position clearly differentiate him from Tapscott, it is clear that they both shared the same interest: to find out whether the allegations that Little had conducted himself in a manner unbecoming to an IDOR employee were true or not. Whether one defendant had the final word, while the other defendant was just a manager on which recommendation the first defendant relied is immaterial. Moreover, it is clear that both Haughey and Tapscott had similar roles in the investigation. While Haughey was Little's direct supervisor, his involvement in the investigation was the same as Tapscott's: they both conducted their own investigation and concurred in the disciplinary action to terminate Little. In addition, both Haughey and Tapscott were sued in their individual capacities only.

The Court also notes that, for purposes of *res judicata*, Parole Commission officers and prison wardens were held to be the same parties or in privity with those parties. *Warren v. McCall*, 709 F.2d 1183, 1185 (7th Cir. 1983). In reaching that decision the court had made reference to another case which concluded that there was privity between defendants which were prison chaplains in Texas and Illinois respectively because all the chaplains were

-11-

employees of the U.S. Bureau of Prisons. *Id.* The court in *Warren* had restated the principle enunciated by the Supreme Court that "[t]here is privity between officers of the same government so that a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Id.* (quoting from *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940)). Clearly, Tapscott is an employee of the same governmental agency that was defendant Bower in the previous litigation. Moreover, all individual defendants in the two suits are government employees. Therefore, privity for *res judicata* purpose can also be asserted on that ground.

Having found that all three requirements are met, the Court concludes that the present claim has already been litigated in a case involving the same parties or their privies, and that a final judgment on the merits has been rendered by a court of competent jurisdiction. That judgment is entitled to *res judicata* effect and therefore precludes further consideration of the merits of the claim before this Court.

### 2. Collateral Estoppel

The doctrine of collateral estoppel or issue preclusion could also bar this action brought by Little. Under this doctrine, once an issue is actually and necessarily decided by a court of competent jurisdiction, that determination is conclusive in a subsequent suit on a different cause of action involving a party to the prior litigation. *Montana*, 440 U.S. 153; *see also Schellong v. U.S. I.N.S..*, 805 F.2d 655, 658 (7th Cir. 1986). The scope of the doctrine of collateral estoppel has been broadened beyond its common law limits by abandoning the requirement of mutuality

of parties and by conditionally approving the "offensive" use of collateral estoppel by a non-party to a prior lawsuit. *U.S. v. Mendoza*, 464 U.S. 154, 158-159 (1984). Offensive use of collateral estoppel occurs when a plaintiff seeks to preclude a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in a previous action against the same or a different party. *Id.* at 159, n. 4. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in a prior action against the same or a different party. *Id.*

Collateral estoppel will bar relitigation of an issue if four elements are met: (1) the party against whom collateral estoppel is asserted must have been fully represented in the prior litigation; (2) the issue sought to be precluded must be identical to an issue involved in the prior litigation; (3) the issue must have been actually litigated and decided on the merits in the prior litigation; and (4) the resolution of that issue must have been necessary to the court's judgment. *Gray*, 885 F.2d at 406 (citing *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987). In federal actions, including section 1983 actions, a judgment will not be given collateral estoppel effect if the party against whom a previous court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court. *Haring v. Prosise, 462 U.S. 306*, 313 (1983).

In the case at hand, Tapscott seeks to prevent Little from asserting a claim Little had previously litigated and lost against other defendants. Therefore, the defensive collateral estoppel theory applies in this case. The question becomes whether any issues in the current case were identical to those in *Little 1*, whether those issues were actually litigated and decided

on the merits in that prior suit, whether they were essential to the outcome of the suit and whether Little had a full and fair opportunity to litigate his claims or issues before Judge Kocoras.

Comparing the complaint in the prior suit to the current complaint it is clear that collateral estoppel bars the current lawsuit. Since the plaintiff is the same in both actions, the first requirement is clearly met. As the party against whom collateral estoppel is asserted, Little had been fully represented in the prior litigation. The second requirement – the issue sought to be precluded must be identical to an issue involved in the prior litigation – is also met. As previously noted, the essence of Little's present lawsuit – and the main issue before the Court – is whether Little's substantive due process rights under 42 U.S.C. § 1983 were violated by Tapscott when Tapscott recommended that Little be terminated. While Little's other claim that Tapscott violated a court approved settlement agreement when he referred to a prior suspension as a basis of discipline during the arbitration proceedings may present a different issue and be the basis of a breach of contract cause of action, it does not change the essence of the lawsuit. The current complaint has only one count: an alleged violation of section 1983. The same allegations in the current complaint were pleaded in the prior complaint. The events giving rise to the section 1983 claim against Tapscott occurred at the same point in time and over the same facts as the events in *Little 1*. As Defendant has pointed out and the Court has previously noted, there are numerous paragraphs which are identical in the two complaints and this is undisputed. The overlap is simply too significant. Therefore, the Court determines that this action involves the same issues of law and fact as the previous action.

Next, we must determine whether the issues were actually litigated and decided on the merits in the prior litigation. The prior action was decided on a motion for summary judgment. A granting of summary judgment operates to bar the cause of action for purposes of issue preclusion. 18A Charles Alan Wright, et. al., *Federal Practice & Procedure,* § 4444 (3d ed. 2002). In the previous action, the court had before it the briefs for and against the summary judgment motion and the accompanying affidavits of each party. Judge Kocoras read and heard the parties opposing arguments and concluded that the case would be decided on summary judgment. Therefore, the issues were actually litigated for collateral estoppel purposes. *See Kunzelman,* 799 F.2d at 1177. Moreover, a granted motion for summary judgment constitutes a decision on the merits that is binding and operates to merge the cause of action for purposes of preclusion. Charles Alan Wright, et. al., *Federal Practice & Procedure,* § 4444 (3d ed. 2002). Therefore, the prior disposition on the summary judgment motion was a final decision on the merits as it resolved all outstanding claims and made clear that the suit was at the end.[5] *See Head v. Chicago School Reform Bd. of Trustees,* 225 F.3d 794, 800 (7th Cir. 2000); *see also Otis v. City of Chicago,* 29 F.3d 1159, 1163-66 (7th Cir. 1994) (en banc). As a result, the third element of issue preclusion is also satisfied.

The fourth requirement of collateral estoppel requires that the resolution of the issue or issues was essential to the court's judgment. In the prior lawsuit, one of the issues underlying Little's claims was whether he was retaliated against when his termination was recommended by several managers. Judge Kocoras' opinion included a thorough analysis of the allegation in the

---

[5] It is undisputed that Judge Kocoras's decision was a final order since *Little I* is currently on appeal.

complaint, before concluding that no violation of section 1983 occurred. Because the disposition of the prior case specifically addressed and was dependent upon the resolution of that issue, it was therefore necessary to the court's judgment. Thus, the fourth requirement is met. Lastly, critical to the application of issue preclusion is the guarantee that the party to be estopped had the opportunity and incentive to litigate the issue aggressively. There is no indication that Little did not have a full and fair opportunity to litigate. Little did not assert it and there is no reason to doubt the fairness of the prior proceedings. Instead, the issues were fully briefed and argued by both sides.

Therefore, the court concludes that the resolution of the prior case satisfies all elements of issue preclusion and bars the present action. Judicial resources will be conserved and litigants protected from multiple lawsuits by the application of defensive collateral estoppel to Little's claims.

### 3. Qualified Immunity

In the alternative, Tapscott claims that he is protected by qualified immunity and on the basis of such should be dismissed. State officials who occupy positions with discretionary authority and are acting in their official capacity may have qualified immunity for claims alleging that the state officials violated the constitutional rights of an individual. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)). These state actors "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

-16-

Whether qualified immunity applies is a question of law. *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir. 1987) (referring to *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)). Even if the determination of qualified immunity is a legal issue, this determination is not answered in the abstract, but in reference to the particular facts of the case. *Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir. 1988).

To determine if immunity attaches, the court needs to apply a two-prong test. *Ineco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002) (referring to the test enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001)). First, the Court must determine whether, the alleged facts show that the officer's conduct violated a constitutional right. *Id.* This initial inquiry must be in the light most favorable to the party asserting the injury. *Saucier*, 533 U.S. at 201. If the official's actions do not rise to the level of a constitutional injury, the inquiry is at an end and the official is immune from suit. *Id.* However, if a constitutional violation could be made out on a favorable view of the plaintiff's submissions, we must proceed to the next step and ask whether the right was clearly established at the time that the disputed conduct took place. *Id.* at 201-02.

In determining whether a right was clearly established at the time the defendant acted, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). The Supreme Court has stated that the relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202. The Seventh Circuit has set forth the following guideline for deciding qualified immunity questions: "[o]nce the defendant's actions are defined or characterized according to

the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Landstrom v. Illinois Dep't of Children & Family Servs,* 892 F.2d 670, 675 (7th Cir. 1990).

While Little alludes to substantive due process violations under the Fourteenth Amendment, his contentions rest on a theory of retaliation for activities protected by the First Amendment. As Judge Kocoras indicated in his opinion, in order to establish a section 1983 claim based on the First Amendment, Little must show that (1) his conduct was constitutionally protected and (2) his conduct was a "substantial or motivating factor" in his subsequent termination. *Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir. 2000). Little cannot prevail unless he establishes that Tapscott would not have recommended his termination "but for" his complaints. Unfortunately for Little, and as noted by Judge Kocoras, the charges contained in the report with respect to his alleged actions were of sufficient gravity to independently warrant the actions taken by the Department's manager to investigate and discipline Little. Moreover, Little failed to present evidence demonstrating that his complaints about the alleged discriminatory practices motivated the defendants to take adverse actions against him. Therefore, Little's claim lacks the necessary "but for" connection that would allow him to show a constitutional violation. The allegation that Tapscott referred to the prior settlement agreement during the arbitration proceeding fails to change this result. Recognizing that qualified immunity questions should be resolved at the earliest possible stage in litigation, *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987), the Court finds that Tapscott is qualifiedly immune from liability.

### 4. Rule 11 Sanctions

In light of the above findings, Little's request for Rule 11 sanctions is denied.

### CONCLUSION

For the reasons set forth above Tapscott's motion to dismiss is granted. This case is hereby terminated. This is a final and appealable order.

**So Ordered.**

Entered: July 19, 2002

*/s/ Ronald A. Guzman*

**Ronald A. Guzman**

**United States Judge**